S. REUBENS & BROS., INC., Plaintiff, *v.* GEORGE SAMDPERIL, Defendant.

Supreme Court, Special Term, New York County, March 2, 1944.

*Morris Fish* for plaintiff.

*Sapinsley & Lukas* for defendant.

SHIENTAG, J. Performance of the contracts between plaintiff and defendant became illegal, by virtue of the fixation of ceiling prices by the Office of Price Administration, in the absence of permission from the Office of Price Administration to carry out the contracts at the higher-than-ceiling prices provided for therein. Although it would seem that the defendant's refusal to accept the balances due under the contracts was not predicated upon plaintiff's failure to secure the necessary permission from the Office of Price Administration, this circumstance does not have the effect of permitting enforcement, without permission of the Office of Price Administration, of contracts which are illegal in the absence of such permission. The defendant may waive rights intended for his benefit but he may not waive the provisions of the Office of Price Administration regulations enacted in the public interest for the purpose of maintaining price stability and preventing undue price rises and price dislocation. Although the present action is for damages and not for the price, the effect of allowing plaintiff to recover would be the same as if the suit were brought for the price fixed in the contracts since plaintiff is suing for the difference between the price and the amount obtained on resales made by plaintiff of the merchandise covered by the contracts.

Plaintiff argues that in view of the letter received from defendant, dated October 10, 1941, it would have been futile for it to apply for permission of the Office of Price Administration to carry out the contracts. This would perhaps be true if only the rights of plaintiff and defendant were involved. In the situation here presented, however, the only way in which plaintiff could legalize enforcement of the contracts was by securing express permission from the Office of Price Administration. This it concededly did not do as to the unshipped balance with which the present action concerns itself. In order to place itself in a position to recover damages upon the contracts, plaintiff should have applied for the necessary permission notwithstanding the fact that defendant indicated that he would not take delivery even if permission were obtained.

It is true that plaintiff had obtained the necessary permission in connection with the deliveries made and paid for under two of the contracts. Although it is therefore probable that plaintiff would have obtained permission to complete those contracts, the court may not assume that the probable would have occurred. To do so would substitute the court's judgment for that of the Office of Price Administration which is controlling. There is even less basis for assuming that plaintiff would have obtained permission to perform the third contract, which was wholly unperformed and in connection with which no permission whatsoever had been received from the Office of Price Administration.

Plaintiff maintains that even if performance of the contracts was illegal without the requisite permission from the Office of Price Administration at the times fixed for performance by the terms of the contracts themselves, it is nevertheless entitled to recover because the times for performance were extended by the acts and conduct of the parties. Plaintiff points out that the defendant's letter of October 10, 1941, did not purport to cancel or repudiate the contracts but merely stated that it was impossible for the defendant " to take in any more material *temporarily* " and added that " everything is being held up *temporarily* ". (Italics supplied.) Although plaintiff's letter of November 29, 1941, states that defendant's son had advised plaintiff that defendant " would not accept the large balance of Copper sold you in July " and that the defendant's son claimed " that the cancellation was due to the refusal of your [defendant's] customers to accept because they could not obtain Priority Numbers ", plaintiff states that it wrote to the defendant on several occasions in December, 1941, about the performance of the contracts and that defendant promised from time to time through the early part of 1942 to discuss the matter with plaintiff. It appears that the restrictions on the prices of the copper involved in the contracts between the parties were removed as of February 27, 1942. The defendant's affidavit admits correspondence and negotiations between the parties after October 10, 1941.

Under the circumstances a triable issue is presented as to whether there was an absolute repudiation by the defendant prior to February 27, 1942, when the price restrictions ceased to exist. If there was no such absolute repudiation prior to February 27, 1942, and the time for performance was deferred beyond that date, the subsequent refusal of the defendant to accept the merchandise constituted a breach of contract for which plaintiff would be entitled to recover.

The motion for summary judgment is denied.